**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-22-00461-PHX-DWL |
| Appellant, | **ORDER** |
| v. | |
| Robert A. Mackenzie, | |
| Appellee. | |

Pending before the Court are the parties' cross-appeals from an order of the bankruptcy court.  For the following reasons, the bankruptcy court's decision is affirmed.

## RELEVANT BACKGROUND

In 2010, Michael A. Leite and Andrea C. Carvalho ("Debtors") filed a late income tax return for fiscal year 2009 and reported no taxes.  (Doc. 6-17.)  The Internal Revenue Service ("IRS") issued Debtors a refund but later reexamined Debtors' tax return and found that Debtors had significantly underreported their taxes owed.  (*Id.*)  The IRS assessed additional taxes, penalties, and interest on both the taxes and penalties.  (*Id.*)  The IRS then secured a federal tax lien (the "Tax Lien") against Debtors' house in Connecticut (the "Property").  (*Id.  See also* Doc. 6-11 at 5 [notice of federal tax lien].)

In September 2019, Debtors filed a petition for Chapter 7 bankruptcy.  (Doc. 6-4.)  The IRS filed a proof of claim, which included a secured claim for the taxes (the "Taxes"), penalties (the "Penalties"), and interest on both.[1]  (Docs. 6-6, 6-7.)  The Property was later

---

[1]     The Court refers to these two categories as Taxes and Penalties for ease of reference,

1   sold, but after satisfying other costs and claims on the Property, the proceeds from the sale

2   (the "Proceeds") were not enough to pay the full amount of the IRS's claim.  (Doc. 6-11 at

3   2 ¶ 10 [reporting net proceeds of $38,642.80 from the sale of the Property].)  Meanwhile,

4   in December 2019, Debtors filed a (late) tax return for fiscal year 2017 and claimed a

5   refund of $10,244 (the "Overpayment").[2]  (Doc. 6-11 at 9-10.)

6       In May 2020, the Trustee initiated an adversary proceeding to avoid the Tax Lien

7   and preserve it for the benefit of the bankruptcy estate.  (Doc. 6-8.)

8       On June 18, 2020, the Trustee moved for summary judgment.  (Doc. 6-10.)  In

9   relevant part, the Trustee argued that the Proceeds should be allocated on a pro rata basis

10  between the Taxes (an unavoidable claim held by the IRS) and the Penalties (an avoided

11  and preserved claim held by the Trustee).  (*Id.* at 6-8.)  The Trustee also argued that the

12  Overpayment, which had not yet been processed at the time, should be applied to offset the

13  Taxes (rather than the Penalties).  (*Id.* at 7-8.)

14      After full briefing and oral argument, the bankruptcy court agreed with the Trustee

15  as to the allocation issue but declined to decide the Overpayment issue.  (Doc. 6-25.)  On

16  October 8, 2020, the bankruptcy court issued a final order, allocating specific dollar

17  amounts to the Taxes and Penalties, avoiding and preserving the Tax Lien to the extent of

18  the Penalties, and stating that the Overpayment issue would "await agreement of the parties

19  or further order of the [bankruptcy court]."  (Doc. 6-30 at 1-2.)

20      The government appealed.  On September 27, 2021, after full briefing, the issuance

21  _____

22  although both categories also encompass interest on each respective amount.

    [2]     In previous orders, the Court referred to the anticipated tax refund as the "Refund."

23  In one of its briefs, the government clarifies that there is a legal distinction between a "tax
    overpayment" and a "tax refund" and that this distinction is relevant for purposes of setoff

24  under 26 U.S.C. § 6402.  (Doc. 10 at 23-24.)  *See also In re Faasoa*, 576 B.R. 631, 645
    (Bankr. S.D. Cal. 2017) ("Note the distinction between an overpayment and a refund.  The

25  refund is the balance of the overpayment after it has been applied to past tax liabilities.
    Thus, [26 U.S.C. § 6402] 'grants the IRS discretion whether to offset against a debtor's

26  unpaid tax liability or to refund the overpayment to the taxpayer.'  As a result, the debtor
    is not entitled to a refund to the extent of the unpaid liability.  In fact, 'overpayments are

27  not assets of the taxpayer until the IRS credits any overpayment to unpaid taxes.'
    Consequently, the anticipated refund does not become property of the estate.") (citations

28  omitted).  Recognizing this distinction, the Court has changed the nomenclature from
    "Refund" to "Overpayment" for purposes of this order.

- 2 -

of a tentative order, and oral argument, the Court issued a 24-page order in which it affirmed the bankruptcy court's order as to the allocation of the Proceeds in a pro rata fashion but reversed and remanded as to the Overpayment issue, finding that the bankruptcy court erred by allocating specific dollar amounts of Proceeds before determining whether the government could retroactively offset the balance owed on the Tax Lien. *United States v. Mackenzie*, 2021 WL 4427069, *7-14 (D. Ariz. 2021).

The government appealed the Court's order to the Ninth Circuit. However, on December 17, 2021, the Ninth Circuit issued an order stating that "[a] review of the record suggests that this court may lack jurisdiction over this appeal from the district court's judgment affirming in part and reversing in part, the bankruptcy court's order on the first amended motion for summary judgment. Within 21 days after the date of this order, appellant shall move for voluntary dismissal of this appeal or show cause why it should not be dismissed for lack of jurisdiction." *In re Leite*, Ninth Cir. No. 21-16987, Dkt. No. 8. Afterward, the government filed an unopposed motion to dismiss for lack of jurisdiction. *Id.*, Dkt. No. 11. This request was granted and the appeal was dismissed. *In re Leite*, 2022 WL 1671886 (9th Cir. 2022).

On remand to the bankruptcy court, the parties submitted briefs regarding the Overpayment issue. (Doc. 6-43 [government's brief]; Doc. 6-44 [trustee's brief]; Doc. 6-45 [government's reply].) On February 3, 2022, a few days after oral argument (Doc. 6-46), the bankruptcy court issued an amended order holding that the IRS was entitled to retroactively apply the Overpayment to offset the Penalties. (Doc. 6-48 [minute entry explaining decision].)

More specifically, the bankruptcy court began by noting that, "[a]s the IRS explains, set off is allowed under 26 U.S.C. § 6402(a) and is credited on the date payment is due, not on the date it was processed." (Doc. 6-48 at 3, footnote omitted.) Next, because the parties agreed that § 553 of the Bankruptcy Code applied to the setoff, the bankruptcy court turned to the framework for applying § 553 provided by the Ninth Circuit in *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th Cir. 1996):

1
2
3
4
5

> Under section 553(a), each debt or claim sought to be offset must have arisen prior to filing of the bankruptcy petition. A claim can be set off whether it is contingent or unliquidated, as long as the claim qualifies as 'mutual' under applicable nonbankruptcy law . . . . Additionally, the debts must be mutual and in order to be mutual they must be in the same right and between the same parties, standing in the same capacity. The mutuality requirement is strictly construed. . . . The right of set off is permissive, not mandatory; its application rests in the discretion of the court, which exercises such discretion under the general principles of equity.

6

(Doc. 6-48 at 4-5, internal citations omitted.)

7
8
9
10

     With this framework in mind, the bankruptcy court addressed the Trustee's § 553 arguments, which focused on "mutuality and equity." (*Id.* at 5.) First, the bankruptcy court concluded "the debt is mutual for purposes of set off." (*Id.* at 5.) The bankruptcy court dismissed the cases provided by the Trustee, which "discuss[ed] the difficulty in set off

11
12
13
14
15
16

when it is as against a contingent claim that has not yet become due," as distinguishable. (*Id.* at 5 ["The Trustee does not explain how the overpayment, which is not a claim or a debt, fits into this analysis, or why the overpayment fails this test or why it was not 'absolutely owing' simply because it had yet to be discovered as of the petition date."].) The court then analogized to *In re Gould*, 401 B.R. 415 (B.A.P. 9th Cir. 2009), *aff'd,* 603 F.3d 1100 (9th Cir. 2010), where "there was no question regarding mutuality under similar

17
18
19
20
21
22
23

facts." (*Id.*) More specifically, the bankruptcy court reasoned that, like in *Gould* (in which the IRS "sought to offset as against a prepetition tax debt, an overpayment that was discovered based on overdue prepetition tax returns filed post-petition"), the Overpayment here was "contingent and unliquidated on the petition date, but only because the parties were not aware of it until the debtors filed their tax returns." (*Id.* ["Despite the date of its 'discovery' or 'determination,' the overpayment itself occurred well before the petition date."].)

24
25
26
27
28

     As for equitable considerations, the bankruptcy court rejected the Trustee's contention that "the IRS acted in an inequitable manner in not processing the return quicker so that it could offset before this Court reached its decision as to avoidance of the lien." (*Id.* at 6 ["The IRS kept the Court and the Trustee fully informed where things stood regarding the return."].) Accordingly, the bankruptcy court concluded "the IRS

1    undoubtedly possesses a right of set off." (*Id.* at 6.)

2          Next, the bankruptcy court turned to the "narrower question" on remand—whether

3    the IRS "retains a specific right to offset its debt to reduce a lien, after the Court ruled

4    avoiding the lien under § 724(a)." (*Id.*)  On that issue, the bankruptcy court rejected most

5    of the government's arguments.  For example, the court found the IRS's reliance on *Gould*

6    unpersuasive, stating that *Gould* is distinguishable because it turned on "whether the IRS

7    could offset an overpayment against prepetition tax debts in light of the debtor's claimed

8    exemption in any refund under § 522." (*Id.* at 6-7.  *See also id.* at 7-8 [finding that *In re*

9    *Silver Eagle Co.*, 262 B.R. 534, 535 (Bankr. D. Or. 2001), was distinguishable because

10   "the *Silver Eagle* court was not faced with a tax lien claim against real property and

11   certainly not a tax lien that had been avoided by the chapter 7 trustee following an adversary

12   proceeding"].)  Because the court did not agree with the government's "premise"—*i.e.*, that

13   the government's setoff right "trump[ed] all other provisions, including the avoidance

14   provisions of § 724(a)"—the court declined to address the Trustee's responsive arguments,

15   which relied on *In re Glass*, 60 F.3d 565 (9th Cir. 1999), "other than to say that [the court]

16   did not find the case, or similar cases, on point or helpful in resolving the issue at hand."

17   (Doc. 6-48 at 8.)

18         The bankruptcy court also disagreed with the government's argument that the

19   portion of the tax code "mandating the application date of the overpayment as April 15,

20   2018, provides [the IRS] with the right to set off against an avoided lien." (*Id.* at 8 ["As

21   the [court] sees it, adopting the IRS's position would lead to all sorts of problems[] if a lien

22   is avoided and the funds distributed prior to the IRS determining an overpayment."].)

23         Nevertheless, the bankruptcy court explained that, although it intended the October

24   8, 2020 order to be final at the time of issuance, it came to realize (after re-reviewing the

25   transcripts and pleadings) that it had misunderstood the IRS's position at summary

26   judgment regarding the setoff. (*Id.* at 9.)  The bankruptcy court further noted that the

27   October 8, 2020 order was "not consistent with its remarks at the first hearing on September

28   3, 2020, which have continued to cause confusion" and that "setting the amounts of the

liens was inconsistent with the position taken by the Trustee that he might contest a set off that was not applied to the IRS's secured tax and interest claim." (*Id.* at 9-10.)

The bankruptcy court then explained that, had it properly understood that "the IRS was asking [the bankruptcy court] to allow it to perform the offset prior to the effective avoidance of the lien," the court would have granted that request. (*Id.* at 10.) "Unfortunately, that did not happen." (*Id.*) Accordingly, the court "correct[ed]" the error by allowing the IRS to perform a setoff of the Overpayment (including against the Penalties) within 14 days and directing the IRS to then upload a proposed order "amending" the October 8, 2020 order "so that it is consistent with this ruling and the set off taken." (*Id.*)

On March 10, 2022, the bankruptcy court issued its final order. (Doc. 6-50.) The court held as follows:

- The government was entitled to apply the $10,244.00 Overpayment to the Debtors' outstanding liabilities, including (at its discretion) the portion attributable to the Penalties.

- The government may apply the Overpayment "as of the date the 2017 return was due, *i.e.*, prior to the bankruptcy petition."

- The adjusted balance for the Penalties was $24,991.14 (*i.e.*, $35,235.14 minus $10,244.00); the balance of the Taxes ($45,938.99) remained the same.

- The Tax Lien that attached to the Proceeds was avoided pursuant to 11 U.S.C. § 724(a) to the extent of the Penalties.

- The avoided lien claim for the Penalties was preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

- The unavoided portion of the tax lien (*i.e.*, the Taxes) remained attached to the Proceeds.

- The bankruptcy estate was "entitled to a pro-rata portion of the . . . Proceeds, in proportion to the share of the [Penalties] vis a vis the [Taxes] for distribution free and clear of any further lien, claim or interest of the defendant, except that the defendant may remain eligible for payment as an unsecured creditor on the [Penalties], in the usual course, to the extent the estate has sufficient funds."

- The Trustee may not "distribute funds associated with the [Penalties] or the [Taxes] until the deadline for each party to appeals has passed."

- The Trustee's "request for an order determining that the unavoided portion of the lien shall be used to pay administrative expenses pursuant

1     to 11 U.S.C. §724(b) [was] denied without prejudice."

2  (*Id.* at 2-3 ¶¶ 1-9.)

3                          **ANALYSIS**

4          Both sides have appealed from the bankruptcy court's most recent order.  The

5  government essentially seeks to relitigate the pro rata allocation issue that the Court

6  resolved in the Trustee's favor during the government's first appeal.  (Doc. 6.)  Meanwhile,

7  in a cross-appeal, the Trustee seeks review of the bankruptcy court's decision on remand

8  to allow the IRS to apply the Overpayment to the Penalties portion of Debtors' outstanding

9  tax liabilities.  (Doc. 9.)

10  I.    Government's Appeal

11         In its appeal, the government reiterates many of the arguments it raised during its

12  earlier appeal.  For example, the government spends several pages explaining why § 105(a)

13  of the Bankruptcy Code "does not authorize the pro rata approach," which the government

14  also addressed at length during the September 2021 oral argument in the earlier appeal.

15  *Mackenzie*, 2021 WL 4427069 at *7 n.7.[3]  (*Also compare* Doc. 6-36 at 31 [opening brief

16  in previous appeal: "Mathematically, allocating funds to avoided and not-avoidable liens

17  pro rata . . . deprives a taxing authority that holds a not-avoidable lien of payment on the

18  not-avoidable components of its lien due to taxpayer misconduct."] *with* Doc. 6 at 13

19  [opening brief in current appeal: "Mathematically, the pro rata approach penalizes a non-

20  penalty lienholder that is the victim of a debtor's wrongdoing . . . ."].).

21         For several reasons, the Court declines to revisit these issues.  As the Trustee notes

22  (Doc. 9 at 1-4), neither the law nor the relevant facts have changed since the issuance of

23  the Court's September 2021 order.  Indeed, despite asserting that "further developments in

24  this area of law warrant consideration," the government identifies only two new cases

25

26  _____

[3]     Indeed, during the September 2021 oral argument, the government requested an
27  opportunity to brief various issues addressed in the Court's tentative order, including
§ 105(a); the Court denied the request, noting that "[b]ecause the tentative ruling (which
28  discussed § 105) was issued nearly two weeks before oral argument, the government had
an opportunity to address the issues in question (and, indeed, addressed them at length)
during oral argument."  *Mackenzie*, 2021 WL 4427069 at *7 n.7.

addressing the disputed issue, both of which are non-binding (and only one of which supports the government's position). (Doc. 6 at 8-9.) Also, the day before oral argument, a third decision addressing this issue was issued: *Freeman v. Warfield*, 2023 WL 2665735 (D. Ariz. 2023). Faced with nearly identical facts, the court held after a thorough and comprehensive analysis that (1) "Section 724(b) does not apply to the tax and interest components of a lien that is subject to Section 724(a)"; and (2) the pro rata allocation method is "consistent with the Bankruptcy Code and relevant binding authorities." *Id.* at *6-9. *See also id.* at *12-16 (reasoning that the pro rata method is consistent with "the process of avoidance under Section 724(a)" and "with automatic preservation under Section 551" and "harmonizes the competing statutory policies under the Code by facilitating a means of adequate protection in the context of bankruptcy sales; protecting the interests and benefit of the estate from other claims; and maintaining the status quo of priorities").

The government further asserts that reconsideration is appropriate because "[a]lthough this Court affirmed the Bankruptcy Court on the lien issue, this Court's reasoning differed in several key respects" and this Court "deemed the core question a 'close call.'" (Doc. 6 at 1.) These arguments are unpersuasive. To the extent the Court's reasoning in the September 27, 2021 order differed in some ways from that of the bankruptcy court, the Court issued a tentative ruling on September 8, 2021 (Doc. 6-39) and the parties had a full and fair opportunity to address the Court's reasoning during oral argument on September 20, 2021. *Mackenzie*, 2021 WL 4427069 at *7 (explaining this chronology). Thus, the government's contention that it is "appropriate to address this Court's reasoning" in *this* appeal is unavailing—this is nothing more than a request for a second bite at the apple. More broadly, good case management and judicial efficiency counsel against reconsidering the Court's previous decision, reached after extensive deliberation and analysis, to affirm the bankruptcy court's use of the pro rata approach.[4]

---

[4]     In a tentative order, the Court noted that the law of the case doctrine also counsels against reconsideration here. (Doc. 15 at 9-10.) "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th

1      The remand to the bankruptcy court on a narrow, unrelated issue (*i.e.*, whether the

2 Overpayment could be set off against the Penalties) does not justify relitigating the merits

3 of the pro rata allocation issue now that the case has returned on appeal for a second time.

4      Finally, as the Trustee notes (Doc. 9 at 4-5), even if the Court construed the

5 government's appeal as a motion to alter or amend under Rule 59(e) of the Federal Rules

6 of Civil Procedure,[5] setting aside the untimeliness of such a request, the government has

7 failed to establish a proper basis for reconsideration—*i.e.*, newly discovered evidence, clear

8 error, or an intervening change in the controlling law. *Wood v. Ryan*, 759 F.3d 1117, 1121

9 (9th Cir. 2014) ("[A] Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly

10 in the interests of finality and conservation of judicial resources.'") (citation omitted).

11 **II.**    <u>Trustee's Cross-Appeal</u>

12      **A.**    **The Parties' Arguments**

13      In his cross-appeal, the Trustee argues that the bankruptcy court committed

14 reversible error by (1) allowing the government to reduce the value of the Penalties, which

15 were "avoided and preserved for the benefit of the bankruptcy estate"; and (2) by allowing

16 the government to reduce the value of the Penalties "retroactively." (Doc. 9 at 1.)

17 According to the Trustee, the Penalties portion of the lien was avoided and preserved for

18 the benefit of the estate pursuant to the bankruptcy court's October 8, 2020 order. (*Id.* at

---

19 Cir. 2012). *See also Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715
20 (9th Cir. 1990) ("The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs."). "A court properly exercises its discretion to
21 reconsider an issue previously decided in only three instances: (1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the
22 law has occurred; or (3) the evidence on remand was substantially different." *Milgard Tempering*, 902 F.2d at 715. Here, neither the controlling authorities nor the evidence have
23 changed. Additionally, despite the government's lengthy arguments to the contrary, and for the reasons discussed at oral argument and in *Mackenzie*, 2021 WL 4427069, the Court
24 is not persuaded that the Court's previous decision was erroneous or manifestly unjust. At oral argument, the government suggested that the Court's previous order was interlocutory such
25 that the law of the case doctrine does not apply. Even assuming (without deciding) that the Court's previous order was interlocutory, the fact the Court is not *precluded* from
26 revisiting it does not mean the Court *should* do so. For the reasons summarized above, reconsideration is not appropriate here.

27 [5]    Although "[t]he federal rules do not contemplate motions for reconsideration," "motions for reconsideration have traditionally been treated as motions to alter or amend
28 under Rule 59(e) . . . if the motion draws into question the correctness of the trial court's decision." *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 827 (B.A.P. 9th Cir. 1986).

8-9.)  "[T]he only issue that was . . . remanded to the bankruptcy court was the propriety of the offset.  The avoidance of the lien has never been in doubt."  (*Id.* at 8-9.)  Because the avoidance "has been completed," "it is too late for the IRS to impair [the Penalties portion of] the lien by altering the debt that it secures" because that portion is now "estate property."  (*Id.* at 7-9.)  The Trustee further contends that "allowing the offset to reduce the value of the penalty portion of the avoided lien after the avoidance action has been filed" would "eviscerate[] §724(a)," which exists to "make the proceeds of penalty liens available to the estate for the benefit of the unsecured creditors."  (*Id.* at 7.)  According to the Trustee, the avoidance action filing date is the relevant date—"once the trustee filed the avoidance [action], the [government] no longer had the right to gerrymander the lien by changing the debt that it secured."  (*Id.* at 13.  *See also id.* at 8-9 [relying on *Glass* for the proposition that "the trustee's avoidance rights cannot be defeated by efforts to 'undo' the avoidable transfer"].)  In a related vein, the Trustee challenges the government's "assumption" that "allowing the setoff automatically reduces what the trustee is entitled to recover under the avoided lien," arguing that if the government is able to collect the amount of the Penalties, the offset can be against the government's unsecured claim for the Penalties, not against the value of the avoided lien.  (*Id.* at 9-10.)  In the Trustee's view, the bankruptcy court effectively allowed a "retroactive" offset, which is "impermissible" because it relies on a "factual fiction"—*i.e.*, that the offset occurred at "some earlier date."  (*Id.* at 11-12.)

In response, the government argues that the bankruptcy court's October 8, 2020 order does not control—instead, upon remand, the bankruptcy court issued a new order (*i.e.*, the March 18, 2022 order) that controls.  (Doc. 10 at 12.)  The government notes that, under the March 18, 2022 order, the bankruptcy court determined that the Overpayment could be offset against the Penalties, recalculated the specific dollar amounts of the Penalties to reflect the offset, and then avoided the Tax Lien to the extent of the (amended) Penalties.  (*Id.*)  Alternatively, even assuming the avoidance itself was effective as of October 2020, the government argues "that does not determine how much money to

allocate to the [avoided] lien, or to the secured claim backed by the lien." (*Id.* at 22.)  As a general matter, the government argues the IRS may apply the Overpayment to offset the Penalties pursuant to 26 U.S.C. § 6402(a), which provides that the IRS may credit overpayments "against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." *Id.* at 25 (internal quotation marks omitted.)  As for timing, the government contends that "the law is clear that overpayments like the one here are deemed made as of that year's return due date, which is usually April 15. . . .  In other words, the overpayment here should be deemed made in 2018, well before the Debtors filed their petition on September 25, 2019—and long before the lien was avoided." (*Id.* at 27.)  The government then identifies various provisions in the Bankruptcy Code that "reinforce[]" the IRS's setoff rights, including 11 U.S.C. § 362(b)(26) (which "explicitly provides that the IRS may offset prepetition overpayments against pre-petition claims, without violating the automatic stay"); § 553 (which "allows creditors to apply pre-petition debts owed by a debtor against pre-petition debts owed to the debtor"); and § 506(a) (which "provides that the dollar amount of a secured claim, like the IRS's secured claim here, must be calculated with reference to any right of setoff").  (*Id.* at 27-30.)  Next, after describing the relevant chronology of the Overpayment issue, the government concludes that the "equities and procedural history" weigh in favor of its position.  (*Id.* at 30-32.)  As for § 724(a), the government argues that "Congress has never said the right to collect avoidable liens overrides all other law," noting that "§ 724(a) does not require that any minimum amount be allocated to avoided liens at all."  (*Id.* at 32-33.)  As for *Glass*, the government contends it is not on point because it "concerns an apparently fraudulent transfer between a debtor father and his non-debtor son;" "[a]t issue was whether a trustee could be credited with recovering the property under . . . § 522(g) . . . when the trustee threatened to sue for fraudulent transfer, and the son 'voluntarily' reconveyed the property back to his father in the face of that (seemingly reasonable) threat."  (*Id.* at 33.)  Thus, "*Glass* did not say a trustee can avoid a lien under § 724(a) without court action."  (*Id.*)[6]

---

[6]      The government also interprets the Trustee's brief as contending that the Overpayment issue is "moot" and provides a number of responsive arguments.  (Doc. 10

In reply, the Trustee reiterates that the Tax Lien was "avoided" to the extent of the Penalties and thus, under *Glass*, "the IRS can no longer reduce that [portion of the] lien to improve its position." (Doc. 11 at 1-2.)  Because the Trustee "filed an avoidance action and has obtained an avoidance order before any offset ever occurred," "the IRS can no longer diminish that asset by reducing the debt that it secures." (*Id.* at 2.)  "On the contrary, if an offset can occur, the IRS can only offset against the debts which it still controls." (*Id.* at 3.  *See also id.* at 4 ["The IRS continues to think of [the Penalties portion of the] lien, and the debt that it secures, to be something that is owed to the IRS that the IRS can manipulate.  That ship has sailed."].)  The Trustee also reiterates that the bankruptcy court attempted to "re-write history" and "turn back the hands of time to accommodate the IRS" by allowing the IRS to apply the offset retroactively (*i.e.*, as of the date the Debtors' 2017 tax return was due).  (*Id.* at 5-6.)

B.      **Standard Of Review**

"[Courts] review decisions to allow or disallow setoff under § 553 for abuse of discretion." *In re Brown & Cole Stores, LLC*, 375 B.R. 873, 877 (B.A.P. 9th Cir. 2007).  Reversal on abuse of discretion grounds is not proper unless the court has "a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached after weighing the relevant factors."  *Gould*, 401 B.R. at 429.  "However, a bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings."  *Id.*  "Absent such abuse, the court will not set aside the disallowance, or, conversely, the allowance."  *In re Petersen*, 437 B.R. 858, 864 (D. Ariz. 2010) (cleaned up).

---

at 35-36.)  The relevant passage of the Trustee's brief is as follows: "The avoidance ruling is incontestable and has not been stayed.  An unstayed order is no less final just because an appeal has been filed.  Appeals are mooted every day by the failure to obtain a stay of a final order.  Thus, despite the appeal of the bankruptcy court's judgment to this Court, and the remand of the offset issue, the avoidance of the IRS lien is and was final." (Doc. 9 at 9.)  Although this passage happens to use the word "mooted," the Court does not construe it as raising a mootness challenge.  At any rate, a party arguing mootness "bears the heavy burden of establishing that [the court] cannot provide any effective relief."  *Gould*, 401 B.R. at 421.  Given the lack of developed argument on this issue, to the extent the Trustee intended to argue mootness, he has not met that burden.

C.     **Analysis**

At oral argument, the Trustee seemed to concede that the IRS would have had the right to set off the Overpayment against the Penalties portion of the Tax Lien before the issuance of bankruptcy court's October 8, 2020 order.  Nevertheless, in an abundance of caution, the Court begins by addressing the bankruptcy court's conclusion that the IRS "undoubtedly" possessed a right of setoff.  (Doc. 6-48 at 6.)

1.     Setoff Right

To enforce a setoff right, a creditor must establish that (1) it has a right of setoff under nonbankruptcy law; and (2) this right should be preserved in bankruptcy under § 553. *In re Luz Int'l, Ltd.*, 219 B.R. 837, 843 (B.A.P. 9th Cir. 1998).  Here, the bankruptcy court correctly noted that the IRS has a statutory right to offset tax overpayments under 26 U.S.C. § 6402(a), which provides:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person.

*Id.*  "The statute allows the IRS to credit 'overpayments' against liabilities for taxes before determining whether a taxpayer is entitled to a 'refund.'"  *Gould*, 401 B.R. at 424.

The bankruptcy court also correctly addressed (Doc. 6-48 at 4-5) whether the government satisfied the three requirements for setoff under § 553 of the bankruptcy code. *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 594 (B.A.P. 9th Cir. 2007) ("Regardless of whether the IRS has a right to setoff under IRC § 6402 and/or other nonbankruptcy statutes, its ability to assert its right of setoff in bankruptcy is subject to the requirements of § 553. The IRS must demonstrate that it has an enforceable right to setoff that should be preserved in the bankruptcy case pursuant to § 553.").  "Section 553 sets forth three conditions that must be met in order for a right of setoff to be recognized and preserved in bankruptcy: (1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual."  *Id.* (internal quotation marks and citation omitted).  "In essence, a creditor must establish two elements before a setoff may be

asserted: timing and mutuality." *Id.* (citation omitted).

Because the Trustee focused on the mutuality element, the bankruptcy court did as well. (Doc. 6-48 at 5.) With respect to that element, "(1) the debts must be in the same right; (2) the debts must be between the same individuals; and (3) those individuals must stand in the same capacity." *Luz Int'l*, 219 B.R. at 845. On appeal, the Trustee does not appear to challenge the bankruptcy court's conclusion about mutuality. However, even if he had, the bankruptcy court did not base its decision on an erroneous view of the law or clearly erroneous factual findings. As for the "same right" requirement, "[t]he mutual debts must arise prepetition in order to be in the 'same right.'" *Faasoa*, 576 B.R. at 638. Here, the Debtors' liabilities clearly arose pre-petition. Likewise, although Debtors did not file their tax return for fiscal year 2017 until after filing the petition, the IRS's obligation to refund the Overpayment accrued no later than at the end of the 2017 tax year—*i.e.*, December 31, 2017. *In re Lawson*, 187 B.R. 6, 7 (Bankr. D. Idaho 1995) ("The refund and the tax claims are mutual within the meaning the section 553. The refund is for overpayments made during the tax period prior to the date the Debtors filed their petition. Therefore, the IRS's obligation to refund the overpayment accrued on December 31, 1994. The tax debt against which the IRS requests the right to setoff the refund also accrued prior to the date the Debtors filed their petition. Accordingly, as the debts are mutual and both debts arose prepetition, section 553 allows setoff of the tax refund.") (internal citations omitted).[7] The debts are also between the same individuals (Debtors and the government),

---

[7]     *See also In re Luongo*, 259 F.3d 323, 334 (5th Cir. 2001) ("Whether a debt arises prepetition is governed by when the debt accrued, not when the action for recovery was brought. A tax obligation accrues when the event that triggers liability has occurred. As of December 31, 1997 all of the events necessary to establish Appellant's tax liability for her 1997 tax year had occurred. The date she actually filed her return is not relevant in determining when the debt arose.") (internal quotation marks and citations omitted); *In re Jones*, 230 B.R. 875, 878 (M.D. Ala. 1999) ("[T]he debt that the IRS owes to Debtor, represented by Debtor's 1995 income tax overpayment, arose prior to Debtor filing for bankruptcy. Although Debtor filed for bankruptcy on April 12, 1996, and she did not file her 1995 tax return until three days later, April 15, 1996, her 1995 overpayment of $2425, actually accrued on December 31, 1995, the end of the 1995 tax year."); *In re Orlinski*, 140 B.R. 600, 602 (Bankr. S.D. Ga. 1991) ("The IRS's 'debt' for debtor's tax overpayment accrued on December 31, 1990 at the close of the taxable year for which overpayment was made, 1990."); *In re Rozel Indus., Inc.*, 120 B.R. 944, 949 (Bankr. N.D. Ill. 1990) ("A refund for a taxable year prior to the petition date actually arises prior to the commencement of the case even though it is not claimed by the taxpayer (debtor) until

1    standing in the same capacity.

2           The bankruptcy court also addressed the Trustee's equitable concerns, concluding

3    that "the IRS did not act in an inequitable manner."  (Doc. 6-48 at 6.)[8]  Although the

4    Trustee's brief makes a number of assertions related to fairness (*e.g.*, emphasizing the

5    "harm to creditors," Doc. 9 at 8), the Trustee has not established that the bankruptcy court

6    relied on incorrect facts or law when addressing whether equitable considerations weighed

7    against setoff.   Moreover, the record demonstrates that, throughout this litigation, the

8    government repeatedly raised the setoff issue and noted the IRS's intent to apply the

9    Overpayment to reduce Debtors' outstanding liabilities.  (*See, e.g.*, Doc. 6-20 at 5 ¶ 16

10   ["The IRS may apply overpayments from one pre-petition tax year to liabilities for another

11   pre-petition year, so Claim 2-2 is subject to change due to the claimed refund for tax year

12   2017."]; Doc. 6-23 at 13-15 [explaining why the IRS had yet to process Debtors' tax

13   return]; Doc. 6-32 at 2 ["[T]he overpayment allocation issue is a necessary predicate to

14   determining the amounts of the lien components, and is therefore unavoidably a part of this

15   adversary proceeding."]; *id.* at 8 ["[T]he Order arguably precludes the IRS from allocating

16   the 2017 overpayment to penalties for purposes of determining the pro rata computation

17   ordered by the Court."]; *id.* at 8 n.3 ["[T]he Internal Revenue Code requires *retroactive*

18   application of overpayment creditors as of the time the overpayment arises which, in this

19   case, was April 15, 2018."].)  Accordingly, the Trustee's contention that the government

20   "never expressed" any concerns about the legal effect of the October 8, 2020 order on the

21   IRS's ability to offset the Overpayment against the Penalties (Doc. 11 at 5) is belied by the

22   record.

23           …

24           …

25           …

26   _____

27   after the filing of the petition and the return claiming it was not due until after the petition
     date.").

28   [8]      "[M]yriad cases hold that the court may disallow a setoff on equitable grounds."
     *Faasoa*, 576 B.R. at 638.

1

2.    <u>Application To Penalties</u>

2      As the government notes, the Trustee "appears to challenge 'retroactivity' in two

3  different senses." (Doc. 10 at 20.)  First, the Trustee argues that, pursuant to the bankruptcy

4  court's October 8, 2020 order, the Penalties portion of the Tax Lien was "avoided" (and

5  thus became "estate property") on that date, such that the amount of the Penalties could no

6  longer be reduced.  (*See, e.g.*, Doc. 9 at 3 ["[T]he bankruptcy court committed reversible

7  error in allowing the IRS to offset the 2018 overpayment retroactively to reduce the penalty

8  portion of the lien that is now held by the bankruptcy estate."].)  Many of the Trustee's

9  arguments flow from this premise.  For example, he relies heavily on *Glass* for the

10  proposition that "the trustee's avoidance rights cannot be defeated by efforts to 'undo' the

11  avoidable transfer." (Doc. 9 at 8.  *See also id.* at 8 [arguing that the IRS cannot "diminish"

12  an avoided lien"]; *id.* at 9 [asserting that "the avoidance of the lien has been completed"

13  and that the government is effectively asking to "undo" the lien].)[9]

14      In response, the government argues that the Trustee "ignore[s] the case's history

15  and attack[s] this Court's prior ruling, as well as the Bankruptcy Court's new order." (Doc.

16  10 at 21.)  More specifically, in the government's view, the Penalties portion of the lien

17  was avoided on March 10, 2022, when the bankruptcy court issued an order recalculating

18  the Penalties portion of the lien (consistent with the Court's remand).  (*Id.* at 20-21.)  This

19  position is supported by the language of the March 10, 2022 order, which held that the Tax

20

21  [9]      Additionally, the Court agrees with the bankruptcy court's characterization of *Glass*
as neither on point nor helpful in resolving the issues at hand.  (Doc. 6-48 at 8.)  In *Glass*,
22  the debtor fraudulently transferred a property to his son (for "love and affection") and "did
not schedule or disclose any interest in the real property, nor did he claim a homestead
23  exemption" under § 522(g) of the Bankruptcy Code.  60 F.3d at 567.  When the trustee
discovered the transfer, he "instructed Glass to amend his bankruptcy schedules to reflect
24  any interest he might have or later assert in such property." *Id.*  Next, "the trustee filed a
formal objection to Glass's claim to a homestead exemption stating that he intended 'to
25  seek an avoidance of this transfer as a fraudulent transfer.'" *Id.*  Glass's son then
reconveyed the property to Glass, who amended his schedules and claimed a homestead
26  exemption of $30,000. *Id.*  The Ninth Circuit affirmed the bankruptcy panel's conclusion
that "where a debtor voluntarily transfers property in a manner that triggers the trustee's
27  avoidance powers or the debtor knowingly conceals a prepetition transfer or an interest in
property, and such property is returned to the estate as a result of the trustee's actions
28  directed toward either the debtor or the transferee, the debtor is not entitled to claim an
exemption under § 522(g)(1)." *Id.* (citation omitted).  *Glass* is factually and legally
distinguishable from the issues presented here.

Lien "is avoided pursuant to 11 U.S.C. § 724(a), to the extent of the [Penalties]." (Doc. 6-50 at 2 ¶ 4.)

In the first appeal, the Court affirmed the bankruptcy court's decision to employ the pro rata approach to allocate the Proceeds between the Penalties and Taxes (as well as the bankruptcy court's conclusion that § 724(a) did not apply) but reversed the bankruptcy court's decision to the extent it "allocate[ed] specific amounts of the pro rata shares of the Proceeds when it had not yet determined whether the government was entitled to retroactively offset the balance owed on the Tax Lien." *Mackenzie*, 2021 WL 4427069 at *7-14. The Court further explained that the bankruptcy court erred by allocating specific amounts because the "the specific proportions of the Taxes and Penalties portions of the Tax Lien [would be] subject to change" if the government was correct that it could apply the Overpayment to the Penalties portion of the Tax Lien retroactively. *Id.* at *14. On remand, the bankruptcy court did not purport to apply the offset to the already-avoided Penalties. (Doc. 6-48 at 9-10.) Indeed, the bankruptcy court rejected many of the government's arguments about why such an approach would be permissible. (*Id.* at 7-8.) Instead, the bankruptcy court "amend[ed]" its October 8, 2020 order to allow the IRS to perform a setoff against the Penalties *before* that portion of the Tax Lien was avoided. (*Id.* at 10. *See also* 6-50.) Thus, to the extent the Trustee's arguments rely on the contention that the bankruptcy court applied the setoff to an already-avoided lien, they are unavailing because this is not what occurred.

Turning to the Trustee's second retroactivity argument, on remand, the bankruptcy court found that it had misunderstood the government's earlier request, at summary judgment, to apply the setoff before the avoidance was effective. (Doc. 6-48 at 9-10.) Because the bankruptcy court found that the IRS "undoubtedly possesse[d] a right of set off" before the Penalties portion was avoided, the court corrected its mistake by allowing the IRS to perform the setoff retroactively. (*Id.* at 10.) The Trustee argues this was error because the bankruptcy court "cannot rewrite history by authorizing the offset 'as of' some earlier date when in fact that is not when the offset actually occurred. . . . [T]he offset was

1    not actually carried out prior to the petition date, and the bankruptcy court cannot waive a

2    wand and 'make it so' by ordering the offset 'as of' some fictional date."  (Doc. 9 at 11.)

3            Generously interpreted, the Trustee appears to challenge the bankruptcy court's

4    ability to issue a "*nunc pro tunc*" authorization of the setoff.[10]   As a general matter, "[a]

5    bankruptcy court's entry of a *nunc pro tunc* approval is reviewed for abuse of discretion or

6    erroneous application of the law."  *In re Atkins*, 69 F.3d 970, 973 (9th Cir. 1995).  Albeit

7    in other contexts, the Ninth Circuit has recognized that § 105(a) of the Bankruptcy Code,

8    which grants bankruptcy courts equitable power to issue any order "that is necessary or

9    appropriate to carry out the provisions of [the Bankruptcy Code]," may authorize

10   retroactive relief.  *See, e.g.*, *In re Harbin*, 486 F.3d 510, 522 (9th Cir. 2007) ("Applying

11   principles of equity, we have recognized the bankruptcy court's equitable discretion to

12   grant retroactive authorization in other contexts where such relief was necessary or

13   appropriate to carry out the provisions of the Code.  Under the right circumstances,

14   retroactive validation of a post-petition refinancing transaction will further the provisions

15   of the Code. . . .  Moreover, nothing in the language of the Bankruptcy Code precludes the

16   court from considering *nunc pro tunc* authorization . . . as one possible remedy in response

17   to the 'equities of the situation' before it.") (internal citations omitted); *In re At Home

18   Corp.*, 392 F.3d 1064, 1070 (9th Cir. 2004) ("The Bankruptcy Code limits the equitable

19   powers of bankruptcy courts to the issuance of 'any order, process, or judgment that is

20

21   _____

     [10]       This interpretation is supported by the sole authority the Trustee provides to support
22   this argument: *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo
     Feliciano*, 140 S. Ct. 696 (2020).  (Doc. 9 at 12-13.)  There, the Supreme Court addressed
23   whether the Puerto Rico Court of First Instance had jurisdiction to issue payment and
     seizure orders.  *Id.* at 699.  In February 2018, "the Archdiocese [had] removed the case to
24   the United States District Court for the District of Puerto Rico," "argu[ing] that the Trust
     had filed for Chapter 11 bankruptcy and that this litigation was sufficiently related to the
25   bankruptcy to give rise to federal jurisdiction."  *Id.* at 699-700.  However, "[t]he
     Bankruptcy Court dismissed the Trust's bankruptcy proceeding on March 13, 2018."  *Id.*
26   at 700.  The Court of First Instance then "issued the relevant payment and seizure orders
     on March 16, March 26, and March 27."  *Id.*  However, "the District Court did not remand
27   the case to the Puerto Rico Court of First Instance until nearly five months later, on August
     20, 2018."  *Id.*  Thus, the district court issued a "*nunc pro tunc* judgment stating that the
28   order 'shall be effective as of March 13, 2018,' the date that the Trust's bankruptcy
     proceeding was dismissed."  *Id.*  The Supreme Court reversed, holding that the court
     "cannot make the record what it is not" via a *nunc pro tunc* order.  *Id.* at 700-01.

necessary or appropriate to carry out the provisions of this title.'  Thus, a bankruptcy court must locate its equitable authority in the Bankruptcy Code.  Fortunately, we need look no further than § 365(d) itself to see that, in appropriate cases, retroactive lease rejection may be 'necessary or appropriate to carry out' this provision of Title 11.") (internal citations omitted).

Here, as discussed, the bankruptcy court's authority to allow the setoff arose from § 553 of the Bankruptcy Code.  After explaining that it "misunderstood" the government's earlier setoff request (made before the effective avoidance of the Penalties) and finding that it "would have permitted the set off" at that point had it properly understood the government's request, the bankruptcy court "correct[ed]" its misunderstanding by amending the October 8, 2020 order to allow the government to perform the setoff against the Penalties portion of the lien before the avoidance date.  Beyond arguing that this approach "create[s] facts which never existed" (Doc. 9 at 12), the Trustee fails to provide any reason (legal or factual) why the bankruptcy court may not exercise its equitable powers under § 105(a) to correct its earlier misunderstanding of the government's position and allow the IRS to exercise a setoff right that the IRS indisputably possessed at the time of the initial request.  There was no error or abuse of discretion.

Accordingly,

**IT IS ORDERED** that the bankruptcy court's order is **affirmed**.  The Clerk is directed to enter judgment accordingly and close this case.

Dated this 30th day of March, 2023.

Dominic W. Lanza
United States District Judge